**OHIO CASUALTY INSURANCE COMPANY, Plaintiff,**

v.

**BAZZI CONSTRUCTION COMPANY, INC., John J. Jacobazzi, a/k/a John J. Iacobazzi, James Argyopoulos, Peter Antonopoulos, Joseph Maffei and Grant Park Sausage Company, Defendants.**

No. 86 C 2330.

United States District Court, N.D. Illinois, E.D.

Aug. 29, 1986.

---

Robert Marc Chemers, Pretzel & Stouffer, Chicago, Ill., for plaintiff.

Barry Burk, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Ohio Casualty Insurance Company ("Ohio") has brought this action for a declaratory judgment against Bazzi Construction Company, Inc.; John J. Jacobazzi, a/k/a John J. Iacobazzi (herein collectively referred to as "Bazzi"); James Argyopoulos, Peter Antonpoulos and Joseph Maffei, individually and as partners d/b/a Grant Park Packing Company and Grant Park Sausage Company (herein collectively referred to as "Grant Park.") Ohio has moved for a judgment on the pleadings pursuant to Fed.R.Civ.Pro. 12(c) with respect to Ohio's complaint for declaratory judgment. For the reasons noted below, that motion is denied.

In considering a motion for judgment on the pleadings, the trial court is required to view the facts presented in the pleadings in the light most favorable to the non-moving party. 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1368 (1969). For purposes of the Court's consideration of the motion, all of the well pleaded factual allegations in the adversary's pleadings are assumed to be true and all contravening assertions in the movant's pleadings are taken to be false. *Beal v. Missouri Pac. R.R. Corp.*, 312 U.S. 45, 61 S.Ct. 418, 85 L.Ed. 577 (1941). In addition to assuming the truthfulness of the factual allegations for purposes of the motion, all reasonable inferences from these facts are drawn in favor of the non-moving party. *Chicago, Milwaukee, St. Paul & Pac. R.R. Co. v. Alva Coal Corp.*, 365 F.2d 49 (7th Cir.1966).

Ohio seeks to have this Court declare that it does not owe a duty to defend Bazzi, and that it is not liable under a comprehensive general liability insurance policy issued by Ohio to Bazzi for any claims against Bazzi arising out of an action filed against Bazzi in state court by Grant Park.

Ohio issued a primary policy of comprehensive general liability insurance to Bazzi, effective from April 21, 1983 to April 21, 1984. Ohio's duty to defend Bazzi under this policy turns on whether any of the allegations contained in Grant Park's complaint state facts even potentially within the coverage of the insurance policy. Thus, an understanding of the Grant Park action is necessary to our consideration of Ohio's duty to defend. In January 1986, Grant Park filed suit against Bazzi, a group of architects and a corporation that supplied steel joists to be used in a remodeling project of Grant Park's garage for use as a meat market. Grant Park had hired the architects and Bazzi to remodel the garage as a meat market and to construct a penthouse on top of the new roof of the garage. Prior to completion of the project, the parties modified the original drawings and specifications to permit the construction of a second floor on the premises attached to the garage. From the complaint in the state court action filed by Grant it is difficult to understand exactly what allegedly went wrong and why, but apparently in January 1984 during the pouring of the concrete for the floor of the second floor, the steel joists started to buckle compromising the structural integrity of the whole building. Grant Park alleged that this "m[ade] the same unsafe and unusable; the plaintiffs [Grant Park] suffered great loss of time in the operation of their business and expended large sums of money to completely tear down and rebuild the second floor construction and to reinforce the roof joists and install steel columns and an entirely new second floor in the interior of the building because the foundation of the existing building was inadequate to support the second floor construction...." Grant Park brought a count of negligence and a count of wilful and wanton conduct against each set of defendants claiming essentially the same negligent conduct by the architects and Bazzi and negligent manufacture of the steel joists by supplier.

Ohio argues in its motion for judgment on the pleadings that it has no duty to defend for two reasons: (1) there is no coverage, and thus no duty to defend, because there are no allegations of "property damage" caused by an "occurrence"; [1] and (2) there is no coverage and thus no duty to defend because of an exclusion in the policy.

The insurer's duty to defend is measured by the allegations contained in the complaint against the insured. If the complaint alleges facts that are potentially within the policy's coverage, the insurer must provide the defense. *Maryland Casualty Co. v. Peppers*, 64 Ill.2d 187, 193, 355 N.E.2d 24, 28 (1976). Any doubt must be resolved in favor of the insured, as the duty to defend is broader than the duty to pay. *See, e.g., LaRotunda v. Royal Globe Insurance Co.*, 87 Ill.App.3d 446, 451, 42 Ill.Dec. 219, 408 N.E.2d 928 (1980). The relevant complaint is the one filed by Grant Park, because any liability that might arise in Ohio through that action flows from the original complaint. Ohio's position can only be accepted if the allegations of Grant Park's complaint, taken as true, provide no basis for coverage under the Ohio policy. *See, Associated Indemnity Co. v. Insurance Co. of North America*, 68 Ill.App.3d 807, 817, 25 Ill.Dec. 258, 386 N.E.2d 529 (1979). In determining whether any of the allegations in the Grant Park complaint come under the terms of the Ohio policy, we must also examine the language of the

---

**1.** The policy defines "property damage" and "occurrence" as follows:

"Property damage" means (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.

"Occurrence" means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured.

policy. If the particular policy language in question is unambiguous, we must give effect to the plain, ordinary and popular meaning of the language. *Canadian Radium and Uranium Corp. v. Indemnity Insurance Co. of North America*, 411 Ill. 325, 332, 104 N.E.2d 250, 254 (1952); *State Farm v. Moore*, 103 Ill.App.3d 250, 255, 58 Ill.Dec. 609, 614, 430 N.E.2d 641, 646 (1981). If, however, the policy language is ambiguous, we must construe such ambiguity in favor of the insured because the insurer drafted the policy. *State Farm v. Moore*, 103 Ill.App.3d at 255, 58 Ill.Dec. at 614, 430 N.E.2d at 646.

■ A liberal reading of the complaint in the Grant Park action reveals that it alleges facts that are potentially within the coverage of the policy. The complaint alleged that the structural integrity of the building was injured by the negligent and wilful and wanton conduct of Bazzi, and thus made unsafe and unusable. (¶ 9, Count III and ¶ 9, Count IV). The building referred to is apparently the garage that was to be modified. The policy provides that property damage covers "physical injury ... of tangible property ... including the loss of use thereof at anytime resulting therefrom...." Thus, it appears clear that Grant Park has made a claim against Bazzi that is potentially within the coverage of the Ohio policy. Ohio, however, characterizes Grant Park's claim as an economic loss and not recoverable, citing various cases. Upon review, those cases at the most hold that damage to a product itself or to a building which is the sole product of the insured are economic damages and not recoverable as property damages. When the damage is to something other than the product, as here the structure of the building *already in existence*, it is not classified as an economic loss. *Western Casualty & Surety v. Brochu*, 105 Ill.2d 486, 86 Ill.Dec. 493, 475 N.E.2d 872 (1985) (breach of contract action sought recovery for damages to newly constructed home against builder, no damage to property other than the new home); *Qualls v. Country Mutual Insurance Co.*, 123 Ill.App.3d 831, 78 Ill.Dec. 934, 462 N.E.2d 1288 (1984) (breach of contract action sought recovery for the diminution in the value of newly constructed home against builder, no damage to property other than the new home); *Sentry Insurance Co. v. S & L Home Heating Co.*, 91 Ill.App.3d 687, 47 Ill.Dec. 102, 414 N.E.2d 1218 (1980) (damage to product itself is only economic damage, but corrosion and deterioration in other systems caused by the defective product could be presumed to be tangible property damage); *Ludwig Candy Co. v. Iowa National Mutual Insurance*, 78 Ill.App.3d 306, 33 Ill.Dec. 605, 396 N.E.2d 1329 (1979) (no property damage found when claim against insured was limited to loss of profits, damages to business reputation, loss of goodwill, costs incurred in warehousing and other incidental expenses).

■ Ohio's next argument is that an exclusion in the policy applies to exclude any possible recovery. Where an insurer attempts to limit liability, the insurer must show that the claim falls within the exclusion, as the insured's intent was to obtain coverage. *Id.* The rule of strictly construing ambiguous provisions against the insurer is most rigorously applied in the case of ambiguous exclusionary provisions in which the insurer seeks to limit its liability. *Playboy Enterprises v. St. Paul Fire & Marine Insurance Co.*, 769 F.2d 425, 428 (7th Cir.1985). Exclusionary provisions, therefore, are applied only where the terms are clear, definite and explicit. *State Farm v. Moore*, 103 Ill.App.3d at 255, 58 Ill.Dec. at 614, 430 N.E.2d at 646. Although the policy contains many exclusions, Ohio in its motion for judgment on the pleadings only argues one applies. Ohio cites exclusion (n) which states that the policy does not apply "to property damage to the named insured's products arising out of such products or any part of such products." However, this exclusion does not apply in this case, in that the damage is to property *other* than the prod-

[redacted]

uct of the insured, here the structure of the already existing building.

[redacted] Ohio has also urged this Court to determine whether or not it is liable under the terms of the policy. Because we believe the questions of whether there was in fact tangible property damage, and to what extent Ohio is therefore liable to Bazzi on the insurance, depend on fact questions to be adjudicated in the pending Grant Park action, this issue is not ripe for our review. *Centennial Insurance Co. v. Applied Health Care Systems,* 710 F.2d 1288, 1289 n. 2 (7th Cir.1983). *See also Maryland Casualty Company v. Peppers,* 64 Ill.2d 187, 196–98, 355 N.E.2d 24, 29–30 (1976); *State Farm v. Moore,* 103 Ill.App.3d at 256, 58 Ill.Dec. at 615, 430 N.E.2d at 647.

In conclusion, Ohio's motion for judgment on the pleadings as to its duty to defend is denied because a fair reading of the complaint in the Grant Park action reveals a claim for property damage that is potentially within the coverage of the insurance policy. Ohio's motion for judgment on the pleadings as to the issue of its liability on the policy is also denied because it is prematurely before this Court.[2]

It is so ordered.

[redacted]

2. Ohio had also filed a motion to strike Bazzi's pleading entitled "Response to Plaintiff's Reply Memorandum of Law." This motion is denied.