Terry Tyler **DORAN** and Rosemary Doran, Plaintiffs,

v.

**CORN PRODUCTS–U.S., A DIVISION OF CPC, INTERNATIONAL, INC.,** and CPC International, Inc., Defendants.

**CPC INTERNATIONAL, INC.,** a corporation, Third Party Plaintiff,

v.

**SUPER ELECTRIC CONSTRUCTION COMPANY** and Continental Casualty Company, Third Party Defendants.

No. 90 C 6364.

United States District Court, N.D. Illinois, E.D.

Sept. 26, 1991.

William Thomas Cahill, Mary Kathryn Kelly, Michael John Lyle, Pope & John, Ltd., Chicago, Ill., for plaintiffs.

James L. Pittman, James L. Pittman & Associates, Ltd., Chicago, Ill., for defendants.

Ellen L. Karecki, Chapman & Cutler, Victor J. Piekarski, Querrey & Harrow, Ltd., Chicago, Ill., for Continental Cas. Co.

Francis James Marasa, Edward F. McGinnis, Sweeney & Riman, Ltd., Chicago, Ill., for Super Elec. Const. Co.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

In this diversity action, plaintiffs Terry and Rosemary Doran brought suit against CPC International, Inc. ("CPC"), alleging that Terry Doran ("Doran") was negligently injured after receiving an electrical shock while climbing out of a precipitator located on CPC's premises. In turn, CPC filed a third-party complaint against Super Electric Construction Company ("Super Electric"), Doran's employer at the time of the accident, seeking indemnification and contribution. Subsequently, CPC was granted leave to amend the third-party complaint to add a count against Continental Casualty Company ("Continental") for declaratory relief. The following motions currently are pending before this court: (1) Super Electronic's motion to withdraw its answer and strike the *ad damnum* clause of the third-party complaint; (2) Super Electronic's motion to dismiss Count II of the third-party complaint; (3) Continental's motion for partial summary judgment on Count IV of the third-party complaint; and (4) CPC's motion for summary judgment on Count IV of the third-party complaint. We address each motion in turn.

## I. Background

The allegations of the complaint, the amended third-party complaint, and the additional submissions by the parties reveal the following facts. At all relevant times, Doran was employed by Super Electric as an electrician. On June 22, 1988, CPC entered into an electrical maintenance agreement with Super Electric whereby it agreed to perform electrical maintenance on the premises of Corn Products, a business division of CPC. On January 5, 1989, Doran and several other Super Electric electricians were performing electrical repair services for CPC at their facility located in or around Summit, Illinois. Specifically, Doran's assignment was to repair a precipitator, a pollution control device used to collect ash particles from the smoke and fumes generated by an attached coal-fired boiler.

CPC's precipitator contained groups of electrical wires, approximately forty feet in length, housed in a large chamber. During normal operation of the precipitator, the wires carried either a positive or negative electrical charge so as to attract ash of opposite polarity. Access into the precipitator for maintenance purposes transpired through a single ingress and egress hatch cover located at the top of the facility. As designed and intended to be operated, the hatch cover is part of an automatic safety system which prevents the hatch cover from being opened unless the electrical current to the precipitator is shut off and the precipitator is grounded.

Upon arrival, Doran was advised that the precipitator was available for repairs. At that time, he observed that the hatch cover was open and that his co-workers were entering the precipitator. Doran entered the hatch along with his co-employees and proceeded down a metal ladder into the precipitator. While inside the precipitator, Doran and his fellow electricians determined that the wires could not be repaired because the area was still too hot from having been used earlier that day. Thus, they decided to postpone the work. As Doran prepared to exit the precipitator, he received a high voltage electrical shock from the electrical equipment attached to the interior of the facility. Doran claims that this electrical shock was caused by a malfunction in the automatic safety system which permitted the hatch cover to open although the precipitator was not properly grounded.

Doran filed his two-count negligence complaint against CPC on October 31, 1990, seeking damages for personal injuries (Count I) and for loss of consortium (Count II). CPC answered, denying all material allegations of negligence and asserting the affirmative defense of plaintiff's comparative negligence. CPC also filed a three-count, third-party complaint against Super Electronic. Count I of the third-party complaint pleads a cause of action for breach of contract to obtain insurance. In Count II, CPC alleges that Super Electronic is contractually obligated to defend and indemnify CPC for all damages sustained in defense of Doran's suit. Finally, Count III pleads a cause of action for contribution pursuant to the Illinois Contribution Act, Ill.Rev.Stat. ch. 70, paras. 301 *et seq.*

Pursuant to the electrical maintenance agreement between Super Electric and CPC, Super Electric purchased from Continental a comprehensive general liability policy, number 2262608, effective from January 1, 1989 to January 1, 1990. This policy contains a blanket additional insured endorsement pursuant to which CPC claims it is insured. On February 22, 1991, CPC filed an amended third-party complaint, adding Count IV, which seeks a declaration of coverage under the comprehensive general liability policy against Continental.

## II. Super Electronic's Motion to Strike the *Ad Damnum* Clause

 The *ad damnum* clause in Count III of CPC's third-party complaint provides:

WHEREFORE, Defendant/Third Party Plaintiff, CPC INTERNATIONAL INC. and its business division, CORN PRODUCTS, prays that if judgment is entered against it and in favor of the Plaintiff, judgment should also be entered in favor of CPC INTERNATIONAL INC. and its business division, CORN PRODUCTS, and against Third Party Defendant, SU-

PER ELECTRIC CONSTRUCTION COMPANY, for its prorata share in such amount as is commensurate with its degree of culpability or misconduct which contributed to cause Plaintiff's injuries or damages.

Super Electronic argues that this clause must be stricken from the third-party complaint for failure to state a cause of action upon which relief can be granted. Pointing to the recent Illinois Supreme Court decision of *Kotecki v. Cyclops Welding Corp.*, No. 68568 —— Ill.2d ——, —— Ill.Dec. ——, —— N.E.2d —— (Ill. April 18, 1991) (1991 WL 57336, 1991 Ill.LEXIS 26), Super Electric contends that it cannot be held liable in contribution for an amount greater than its workers' compensation liability. We agree.

While the majority of jurisdictions (45) do not allow contribution actions against an employer from a defendant sued in tort by an injured employee, *Kotecki*, —— Ill.Dec. at ——, —— N.E.2d at —— (citing Sherman, *Contribution from Employers: Availability, Good Faith Settlements and What the Future May Hold*, 75 Ill.B.J. 568, 572 n. 52 (1987)), the Illinois Supreme Court recognized such an action in *Doyle v. Rhodes*, 101 Ill.2d 1, 77 Ill.Dec. 759, 461 N.E.2d 382 (1984). In *Doyle*, the plaintiff brought suit for injuries he received while working as a highway flagman after being struck by an automobile driven by Rhodes. *Id.* at 4, 77 Ill.Dec. at 761, 461 N.E.2d at 384. Rhodes then filed a third-party complaint seeking contribution from Doyle's employer. *Id.* The court, while recognizing that the Workers' Compensation Act gives an employer immunity from tort actions by its employees, held that a defendant found liable to an employee may bring a claim of contribution against the employer. *Id.* at 14, 77 Ill.Dec. at 762, 461 N.E.2d at 385.

Although recognizing a cause of action, the *Doyle* court did not address the question presently before this court: In what amount may an employer be held liable in contribution? This issue, however, has

since been resolved by the recent decision in *Kotecki*. In *Kotecki*, the plaintiff was allegedly injured while at work by a piece of machinery manufactured by Cyclops Welding Corporation. *Kotecki*, —— Ill.Dec. at ——, —— N.E.2d at ——. Kotecki sued Cyclops under a theory of negligence. Thereafter, Cyclops filed a third-party complaint against Kotecki's employer, seeking contribution. *Id.* After a detailed analysis of the issue,[1] the Illinois Supreme Court held that an employer/third-party defendant cannot be held liable in contribution for an amount in excess of the employer's statutory liability under the Workers' Compensation Act. *Id.*, —— Ill.Dec. at —— ——, —— N.E.2d at —— – ——. The trial court was directed to strike the *ad damnum* clause of the third-party complaint, and to permit Cyclops to seek contribution in an amount not greater than the employer's workers' compensation liability. *Id*

CPC argues that the *Kotecki* decision should be applied prospectively. However, as Judge Conlon noted in *Kalp v. American Nat. Can Co.*, No. 90–4910 (N.D.Ill. May 17, 1991) (1991 WL 86096, 1991 U.S.Dist.LEXIS 6763), the *Kotecki* opinion does not limit its application to future cases, nor does it meet the Illinois general test for prospective application. The Illinois Supreme Court in *Elg v. Whittington*, 119 Ill.2d 344, 116 Ill.Dec. 252, 518 N.E.2d 1232 (1987), annunciated a two-step process to determine when a decision shall apply prospectively. First, the court must consider whether the decision overrules clear precedent on which litigants may have relied or decides an issue of first impression whose resolution was not clearly foreshadowed. *Id.* at 357, 116 Ill.Dec. at 258, 518 N.E.2d at 1238. If these prerequisites are met, then the court considers: (1) whether retroactive application of the new rule furthers or retards its operation; and (2) whether the balance of the equities mandate prospective application. *Id.*

---

1. The court in *Kotecki* explained that limiting an employer's liability in contribution provides the fairest balance "between the competing interests of the employer, as a participant in the workers' compensation system, and the equitable interests of the third-party defendant in not being forced to pay more than its established fault." *Kotecki*, —— Ill.Dec. at ——, —— N.E.2d at ——.

We agree with Judge Conlon's determination that *Kotecki* neither overrules clear precedent nor decides an issue of first impression. *See Kalp,* slip op. at 2. Indeed, the court in *Kotecki* explained that its decision did not "change" existing law, but, rather, it reconciled two potentially conflicting statutes. *Kotecki,* ——— Ill. at ——— – ———, ——— N.E.2d at ——— – ———. Moreover, to the extent that *Kotecki* resolved an issue of first impression, the decision was clearly foreshadowed in *Doyle:*

> The extent to which any right of contribution from the employer under the Contribution Act may impact upon this right of recoupment by the employer has not been raised by the parties in their pleadings and consequently not briefed. At this point, ... we are not prepared to indicate how this aspect of the Compensation Act may affect the operation of the Contribution Act or what adjustments will be necessary because of the recoupment provision. Nevertheless, we caution that some accommodation between those two statutes may be in order.

*Doyle,* 101 Ill.2d at 15, 77 Ill.Dec. at 766, 461 N.E.2d at 389. As CPC has failed to satisfy the threshold requirements for prospective application, the court will apply the *Kotecki* decision retroactively to the present case.[2] Accordingly, we grant Super Electronic's motion to withdraw answer and strike the *ad damnum* clause of Count III of the third-party complaint.[3] CPC may seek contribution from Super Electronic in an amount not greater than Super Electronic's workers' compensation liability for Doran's injuries.

### III. Count II of CPC's Amended Third–Party Complaint

In Count II of the amended third-party complaint, CPC alleges that Super Electronic is contractually obligated to defend and indemnify CPC for all damages sustained in defense of Doran's suit. Super Electric now moves to dismiss Count II,[4] claiming that the indemnification clause is unenforceable under Illinois law. For the reasons discussed below, we grant Super Electric's motion.

#### A. Motion to Dismiss Standard

■ A motion to dismiss should not be granted unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *see also Beam v. IPCO Corp.,* 838 F.2d 242, 244 (7th Cir.1988); *Ellsworth v. City of Racine,* 774 F.2d 182, 184 (7th Cir.1985), *cert. denied,* 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986). We take the "well-pleaded allegations of the complaint as true and view them, as well as reasonable inferences therefrom, in the light most favorable to the plaintiff." *Balabanos v. North Am. Inv. Group, Ltd.,* 708 F.Supp. 1488, 1491 n. 1 (N.D.Ill.1988) (citing *Ellsworth* ).

#### B. Express Contractual Indemnity

■ On June 22, 1988, CPC and Super Electric entered into a contract pursuant to

---

**2.** Although the *Kotecki* opinion has not yet been published in the permanent law reports and may be revised or withdrawn at any time before publication, we are not precluded from applying *Kotecki* to the present case. *Kalp,* slip op. at 2. As noted by Judge Conlon: "The *Kotecki* decision clearly indicates how the Supreme Court of Illinois would resolve the issue confronting this court; if the Illinois Supreme Court later revises or withdraws the *Kotecki* opinion, this court's order may be modified accordingly." *Id.*

**3.** CPC has attempted to obviate the need for the court to rule on this issue by proposing compromise language for the *ad damnum* clause in Count III. That language, however, does not conform to the specific holding in *Kotecki.*

Moreover, any further amendment to the amended third-party complaint must be effected pursuant to Rule 15 of the Federal Rules of Civil Procedure.

**4.** CPC argues that Super Electronic's motion to dismiss technically cannot be filed after an answer has been submitted. While this is an accurate statement, *see* Fed.R.Civ.P. 12(b), a defense of failure to state a claim upon which relief may be granted may be advanced in a motion for judgment on the pleadings under Rule 12(c). Fed.R.Civ.P. 12(h)(2). In any event, this distinction is purely formal, as we review 12(c) motions under the same standard that governs 12(b)(6) motions. *Westcott v. City of Omaha,* 901 F.2d 1486, 1488 (8th Cir.1990).

which Super Electric would provide "maintenance" work at CPC's facility, as directed by CPC's "maintenance managers," in exchange for $300,000. The contract covered repairs and maintenance to any and all of the electrical components at the site. This contract between CPC and Super Electric contains an indemnification clause, which states in pertinent part:

Any Contractor who is presently working for, or will be working for CORN PRODUCTS, a Unit of CPC International, Inc. (Company), that Contractor covenants and agrees to fully defend, protect, indemnify, hold harmless and render whole the Company, its officers, directors, employees and agents, from and against each and every claim, demand or cause of action and any liability, cost and/or expense (including but not limited to reasonable attorneys' fees and expenses incurred in defense of the Company, its officers, directors, employees and/or agents), for damages or loss in connection therewith, which may be made or asserted by Contractor, Contractor's officers, directors, employees and/or agents, or which may be made or asserted by any subcontractor, subcontractor's officers, directors, employees and/or agents, or which may be made or asserted by any third party (including but limited to Company's officers, directors, employees and/or agents), on account of personal injury or death or property damage caused by, arising out of, or in any way incidental to, or in connection with the performance of the work hereunder, including but limited to, those situations where personal injury or death or property damage (or liability therefore) was caused by the sole negligence of the Company, the Contractor, any subcontractor or any third party (and/or any of their respective employees or agents), by the concurrent negligence of any combination of the Company, the Contractor, any subcontractor and/or any third party (and any of their respective officers, directors, employees and/or agents), or where liability for such personal injury or death or property damage with or without fault is imposed on any theory of

strict liability by operation of law, except to the extent that indemnification of the Company (its officers, directors, employees and/or agents) for personal injury or death or property damage resulting from the sole negligence, the concurrent negligence or the strict liability of the Company (its officers, directors, employees and/or agents) is contrary to local law, this provision, to such extent (and only to such extent) is void or voidable.

At issue in the instant case is whether "An Act in relation to indemnity in certain contracts," Ill.Rev.Stat. ch. 29, para. 61 (the "Indemnity Act"), nullifies the above contractual provision. We conclude that it does.

The Indemnity Act provides:

With respect to contracts or agreements, either public or private, for the construction, alteration, repair or maintenance of a building, structure, highway bridge, viaducts or other work dealing with construction, or for any moving, demolition or excavation connected therewith, every covenant, promise or agreement to indemnify or hold harmless another person from that person's own negligence is void as against public policy and wholly unenforceable.

Ill.Rev.Stat. ch. 29, para. 61 (1989). The policy behind this Act is to motivate contractors to take all precautions necessary for the safety of construction workers and the general public. *Davis v. Commonwealth Edison Co.*, 61 Ill.2d 494, 141 Ill. Dec. 719, 336 N.E.2d 881 (1975); *Lyons v. Turner Construction Co.*, 195 Ill.App.3d 36, 141 Ill.Dec. 719, 551 N.E.2d 1062 (1st Dist.1990).

■ In opposition to Super Electric's motion to dismiss, CPC contends that the contract in question does not fall within the scope of the Indemnity Act because (1) the precipitator is a piece of equipment, and not a structure; (2) the type of work to be performed on the precipitator does not constitute "other work dealing with construction"; and (3) apart from its attempt to provide indemnification for CPC's own negligence, the indemnification clause also applies in instances of Super Electronic's neg-

ligence. These arguments, however, are inevitably flawed.

First, there is no question that the precipitator is a structure. *See Smith v. Central Ill. Pub. Serv. Co.*, 176 Ill.App.3d 482, 125 Ill.Dec. 872, 874, 531 N.E.2d 51, 53 (4th Dist.1988) (characterizing a precipitator as "a large *structure*") (emphasis added); *see also* Blacks Law Dictionary 1424 (6th ed. 1990) (defining structure as "[a]ny construction, or any production or piece of work artificially built up or composed of parts joined together in some definite manner"). Moreover, not only does the precipitator itself fall within the definition of the type of structure covered by the Indemnity Act, but the electrical work performed by Super Electronic unequivocally falls within the ambit of the Act. As the Indemnity Act is explicit in including "maintenance of a ... structure," Ill.Rev.Stat. ch. 29, para. 61, there is no need to consider the question of whether the present work comprises "other work dealing with construction."

Finally, although CPC is correct in asserting that the Indemnity Act only voids those agreements which purport to indemnify one for one's own negligence, and not the negligence of another, *see, e.g., Venturi, Inc. v. Austin Co.*, 681 F.Supp. 584 (S.D.Ill.1988); *Coverdill v. Lurgi Corp.*, 146 Ill.App.3d 112, 99 Ill.Dec. 915, 496 N.E.2d 1007 (1st Dist.1986), this reasoning does not overcome Super Electric's motion to dismiss. While it is true that the contract purports to indemnify CPC for Super Electric's negligence, CPC's potential liability to Doran is allegedly based solely upon CPC's negligence. Therefore, the attempt to pass this liability via contractual indemnity is in fact an attempt to seek indemnification for CPC's own negligence, falling squarely within the language of the Indemnity Act. *See Pilon v. George A. Johnson & Son*, 125 Ill.App.3d 590, 80 Ill.Dec. 908, 466 N.E.2d 360 (3d Dist.1984) (since defendant can only be held liable to the subcontractor's employee for some form of culpable conduct, defendant's attempt to pass

the liability to the subcontractor falls within the ambit of the Indemnity Act).

## IV. Count IV of CPC's Amended Third–Party Complaint

CPC and Continental have filed cross motions for summary judgment on Count IV of the amended third-party complaint. Each seeks a declaration of Continental's duty to defend and indemnify CPC under comprehensive general liability policy number 2262608.

CPC asserts that it is entitled to a declaration of (1) Continental's obligation to defend CPC in the *Doran* action, and (2) Continental's obligation to indemnify CPC up to the full stated policy limits of $1,000,-000. Continental, on the other hand, contends that, if it is obligated to indemnify CPC for the claims of Doran, such obligation (1) is limited under the policy to $100,000, and (2) extends only to CPC's liability arising out of the work of Super Electric, and not to any liability "arising out of" CPC's own negligence.

■ Continental, however, does not dispute its obligation to defend CPC in the suit brought by Doran. Indeed, in its August 23, 1991 response to CPC's statement of undisputed facts, Continental stated that a draft in the amount of $59,496.80 for costs relating to the *Doran* action would be sent to the appropriate parties at CPC within a matter of days. There being no dispute over Continental's duty to defend, we turn to the question of Continental's duty to indemnify CPC.[5]

■ Continental argues that the issue of its duty to indemnify CPC is not ripe for adjudication. We agree. The duty to indemnify is triggered, "only after the insured becomes legally obligated to pay damages in the underlying action." *Aetna Casualty and Sur. Co. v. Prestige Casualty Co.*, 195 Ill.App.3d 660, 142 Ill.Dec. 689, 691, 553 N.E.2d 39, 41 (1st Dist.1990) (citing *Zurich Ins. Co. v. Raymark Indus., Inc.*, 118 Ill.2d 23, 112 Ill.Dec. 684, 514

---

5. We note that an insurer's duty to defend and its duty to indemnify an insured are two separate and distinct duties, the duty to defend being the broader of the two. *Aetna Casualty & Sur.*

*Co. v. Prestige Casualty Co.*, 195 Ill.App.3d 660, 142 Ill.Dec. 689, 691, 553 N.E.2d 39, 41 (1st Dist.1990).

N.E.2d 150 (1987)). In the instant case, Continental's duty to indemnify CPC hinges on a conclusion that Doran's accident "arose out of" Super Electric's work, which in turn is contingent upon a determination of the relative culpability of CPC and Super Electric. Because these questions depend on facts to be adjudicated in the pending *Doran* suit, an untimely determination of coverage in this declaratory action could subsequently prejudice the parties in the underlying action through the application of collateral estoppel. *See Murphy v. Urso,* 88 Ill.2d 444, 455–57, 58 Ill.Dec. 828, 833–34, 430 N.E.2d 1079, 1084–85 (1981). As such, the issue of Continental's duty of indemnification is not ripe for our review. *See Centennial Ins. Co. v. Applied Health Care Sys.,* 710 F.2d 1288, 1289 n. 2 (7th Cir.1983); *Ohio Casualty Ins. Co. v. Bazzi Constr. Co.,* 648 F.Supp. 1056, 1061 (N.D.Ill.1986), *aff'd,* 815 F.2d 1146 (7th Cir. 1987); *Maryland Casualty Co. v. Peppers,* 64 Ill.2d 187, 196–98, 355 N.E.2d 24, 29–30 (1976); *Burlington N.R.R. v. Illinois Emcasco Ins. Co.,* 158 Ill.App.3d 783, 788, 110 Ill.Dec. 599, 602, 511 N.E.2d 776, 779 (1st Dist.1987).

### V. Conclusion

For the reasons as stated above: (1) Super Electric's motion to withdraw its answer and strike the *ad damnum* clause of the third-party complaint is granted; (2) Super Electronic's motion to dismiss Count II of the third-party complaint is granted; (3) there is no controversy regarding Continental's duty to defend CPC in the underlying *Doran* action; and (4) the issue of the scope of Continental's duty to indemnify CPC is prematurely before this court. It is so ordered.