LOREN QUALLS, Plaintiff-Appellee, *v.* COUNTRY MUTUAL INSUR-
ANCE COMPANY, Defendant-Appellant (Robert Donaldson *et al.*, Interve-
nors-Appellees).

Fourth District   No. 4—83—0299

Opinion filed April 30, 1984.—Rehearing denied May 25, 1984.

Paul W. Bloomer, of Denby, Dobbs, Meno & Bloomer, P.C., of Carlinville,
for appellant.

Verticchio & Verticchio, of Gillespie, for appellee.

Phelps, Carmody, Kasten, Cain & French, of Carlinville (Carl E. Kasten,
of counsel), for intervenors-appellees.

JUSTICE MILLER delivered the opinion of the court:

The question presented by this appeal is whether a carpenter's
general liability insurance policy provides him with coverage against a
claim arising from work that he performed in an allegedly unwork-
manlike manner. The carpenter, Loren Qualls, was hired by Mr. and
Mrs. Donaldson to construct a new house to what the parties refer to
as the "blacked-in" stage. Unhappy with the work, the Donaldsons
sued Qualls for breach of contract and breach of warranty. Qualls' in-
surer, Country Mutual, denied him coverage, so Qualls brought this

action for a declaratory judgment, seeking a construction of the policy and a declaration of his rights under it; the Donaldsons intervened in behalf of Qualls. The parties filed cross-motions for summary judgment, and the circuit court held that the insurance policy provided "coverage for damages for work performed in an unworkmanlike manner." Country Mutual appeals, and we reverse.

Qualls and the Donaldsons made their agreement in September 1977 for $26,000. A year later the Donaldsons filed suit, alleging that Qualls had breached the agreement, and specified 19 ways in which he either had done the work poorly or had failed to follow the blueprints and other plans. The Donaldsons alleged six separate injuries:

"[1] There is a sag in the house, the walls having missed the piers;

[2] The house leaked and continues to leak;

[3] The footings and walls are severely cracked;

[4] The house has never been completed to the stage agreed upon;

[5] The house has no basement floor;

[6] The appearance of the house materially varies from the blueprints and plans."

The complaint went on to allege that the Donaldsons had advanced Qualls about $23,000—notwithstanding their original agreement that the price would be due upon completion—that costly repairs would be required yet would fail to bring the house into conformity with the Donaldsons' expectations, and that the condition of the house had delayed the Donaldsons' occupancy of it.

The Donaldsons later added a second count to their complaint, alleging that Qualls breached the implied warranty that he would perform the agreement in a workmanlike manner. The second count is identical to the first in all other respects and alleges the same acts in breach and the same injuries.

Under the insurance policy in question Qualls paid for coverage for liability for bodily injury and property damage in two broad areas: the manufacturers' and contractors' liability insurance coverage part and the completed operations and products liability insurance coverage part. These may require some explanation. Manufacturers' and contractors' coverage protects the insured's premises and work in progress; completed operations and products coverage, of concern here, protects the insured from liability arising out of his operation and productions after he has finished or abandoned his work. *Hawkeye Security Insurance Co. v. Hodorowicz* (1980), 84 Ill. App. 3d 948, 406 N.E.2d 146.

The dispute here centers on several of the exclusions to the completed operations and products part. The relevant exclusions provide:
"This insurance does not apply:

(a) to liability assumed by the insured under any contract or agreement; but this exclusion does not apply to a warranty of fitness or quality of the named insured's products or a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner;

\* \* \*

(f) to property damage to the named insured's products arising out of such products or any part of such products;

(g) to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith."

Relying on the exception that is part of exclusion (a), the circuit judge construed the policy as providing "coverage for damages for work performed in an unworkmanlike manner."

Country Mutual argues that the costs of repairing and replacing the insured's own work are excluded by paragraphs (f) and (g) and that an exception, such as that in paragraph (a), cannot be stretched to provide coverage where none otherwise exists. Qualls and the Donaldsons respond that a fair reading of the exclusions shows that the policy is ambiguous and that the ambiguity must be resolved in the insured's favor.

The parties cite decisions from other jurisdictions addressing the same question of contractors' coverage under general liability policies identical or substantially similar to the one at issue here. Some of these courts, relying on their own notions of what an ordinary layman would understand the policy exclusions to mean, have concluded that the language is misleading or insolubly ambiguous and therefore have found coverage by construing the language against the drafters. *Federal Insurance Co. v. P.A.T. Homes, Inc.* (1976), 113 Ariz. 136, 547 P.2d 1050; *Commercial Union Assurance Cos. v. Gollan* (1978), 118 N.H. 744, 394 A.2d 839.

Country Mutual argues that the exclusions are not ambiguous and should be given effect. Several reasons support this view. First, comprehensive general liability policies like the one here are intended to protect the insured from liability for injury or damage to the persons or property of others; they are not intended to pay the costs associated with repairing or replacing the insured's defective work and products, which are purely economic losses. (*LaMarche v. Shelby Mu-*

*tual Insurance Co.* (Fla. 1980), 390 So. 2d 325; *Chambers Gasket & Manufacturing Co. v. General Insurance Co. of America* (1975), 29 Ill. App. 3d 998, 331 N.E.2d 203; *Weedo v. Stone-E-Brick, Inc.* (1979), 81 N.J. 233, 405 A.2d 788.) Finding coverage for the cost of replacing or repairing defective work would transform the policy into something akin to a performance bond. Second, an exception to an exclusion such as that contained here in exclusion (a) should not be interpreted as granting coverage or providing an additional basis for coverage. *Hawkeye Security Insurance Co. v. Hodorowicz* (1980), 84 Ill. App. 3d 948, 406 N.E.2d 146; *Weedo*.

Third, and most important, the exception in exclusion (a) has a meaning that does not conflict with exclusions (f) and (g). Country Mutual cites the explanation given in *Weedo*, which construed an exclusion (a) identical in substance to the one here. The *Weedo* court first repeated its conclusion that a contractor's liability policy covers "faulty workmanship which causes an accident" rather than "an accident of faulty workmanship" and then said:

> "Within this structure, contractual liability is excluded under the terms of exclusion '(a)'. The exception to this exclusion insures, however, that claims premised upon quasi-contract or contract by implication, such as warranty actions, will be covered. Such claims must nevertheless be otherwise cognizable under the general grant of coverage in the first instance in order to constitute a claim 'to which this insurance applies.' " 81 N.J. 233, 249, 405 A.2d 788, 796.

If an insurance policy is not genuinely ambiguous, it should be interpreted and enforced as it appears. (*United States Fire Insurance Co. v. Schnackenberg* (1981), 88 Ill. 2d 1, 429 N.E.2d 1203.) An ambiguity arises here only if the exception in exclusion (a) is interpreted as conflicting with exclusions (f) and (g). That exception has an independent purpose consistent with the rest of the document, however, so no ambiguity exists.

The Donaldsons also argue that exclusions (f) and (g), taken by themselves, do not preclude coverage, for their complaint against Qualls contemplates recovery not only for repairing or replacing his defective work product but also for the damage that his work did to that of others. In the language of *Weedo* that would be faulty workmanship that causes an accident and therefore would not be excluded by the policy. The Donaldsons raised this alternative theory below, but the trial judge did not rule on it.

The Donaldsons argue that the house was not Qualls' work or product alone and that his lapses caused damage to the work and

products of others, as from exposure to the elements. (See *e.g.*, *Elco Industries, Inc. v. Liberty Mutual Insurance Co.* (1980), 90 Ill. App. 3d 1106, 414 N.E.2d 41 (defective governor regulating pins that were installed in engines); *Pittway Corp. v. American Motorists Insurance Co.* (1977), 56 Ill. App. 3d 338, 370 N.E.2d 1271 (defective valves that were used in aerosol cans of hair spray); *Ohio Casualty Insurance Co. v. Terrace Enterprises, Inc.* (Minn. 1977), 260 N.W.2d 450 (insecure footings and foundation that threatened collapse of apartment complex).) In *Elco Industries* and *Pittway* the products of others were damaged or rendered worthless by repairing or using the defective products of the insureds, and coverage was found under the general liability policies involved. In *Terrace Enterprises* the court found coverage because the faulty work lowered the value of the building and, if uncorrected, would have caused the building to collapse.

We reject the suggestion in *Terrace Enterprises* that diminution in value is sufficient in itself to give rise to coverage under a general liability policy such as the one here. Diminution in value is the inevitable result of defective workmanship or products and is the measure of the defect or fault. That the Donaldsons' house is not worth as much as it would be if Qualls had performed his work properly is no reason to find coverage, for the cost of remedying his work product is a purely economic loss and not covered by this policy. *Sentry Insurance Co. v. S & L Home Heating Co.* (1980), 91 Ill. App. 3d 687, 414 N.E.2d 1218.

■ Whether an insurer has a duty to defend is determined by the allegations in the complaint against its insured. (*Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 355 N.E.2d 24.) Here, the Donaldsons sued Qualls for breach of contract and breach of implied warranty. They alleged a matter such as his breaking a bathtub not as a separate cause of action but as evidence of his poor workmanship. The complaint requested damages only for economic losses, which allegedly resulted from Qualls' poor workmanship. Those are excluded from coverage by the policy.

Reversed.

MILLS, P.J., and TRAPP, J., concur.