**OHIO CASUALTY INSURANCE CO.,**
Plaintiff-Appellant,

v.

**BAZZI CONSTRUCTION CO., INC., et al., Defendants-Appellees.**

No. 86–2778.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 23, 1987.

Decided April 9, 1987.

Robert Marc Chemers, Pretzel & Stouffer, Chtd., Chicago, Ill., for plaintiff-appellant.

Barry E. Burke, Chicago, Ill., for defendants-appellees.

Before BAUER, Chief Judge,
CUMMINGS and EASTERBROOK,
Circuit Judges.

CUMMINGS, Circuit Judge.

In April 1983, Ohio Casualty Insurance Co. ("Ohio") issued a comprehensive general liability insurance policy to Bazzi Construction Co. ("Bazzi") and its President, John J. Jacobazzi, effective from April 21, 1983, to April 21, 1984. In January 1986, Grant Park Packing Co. and Grant Park Sausage Co. filed an action for damages in Illinois circuit court alleging that Bazzi negligently carried out a construction project which the two companies had hired Bazzi to complete. The complaint alleged that Bazzi performed these negligent acts in January 1984, within the period during which the insurance policy was effective.

Believing that any damages awarded to the Grant Park companies would be covered by the policy, Bazzi tendered its defense in the action to Ohio. Ohio proceeded to file this action in district court seeking a declaratory judgment that it did not have a duty to defend Bazzi in the state court suit.[1] Ohio appeals the district court's order requiring Ohio to provide Bazzi with a defense.[2] 648 F.Supp. 1056.

Ohio's duty to defend Bazzi under the insurance policy turns on the specific allegations in the underlying state court complaint. Because an insurer's duty to defend is much broader than its duty to indemnify, an insurer owes a duty to defend an insured in an action brought against him if the complaint alleges facts that are even potentially within the coverage of the insurance policy. See *Maryland Casualty Co. v. Peppers*, 64 Ill.2d 187, 193, 355 N.E.2d 24, 28 (1976); *La Rotunda v. Royal Globe Insurance Co.*, 87 Ill.App.3d 446, 451, 42 Ill.Dec. 219, 224, 408 N.E.2d 928, 933 (1980); *Maneikis v. St. Paul Insurance Co.*, 655 F.2d 818, 822 (7th Cir.1981). Any doubt as to coverage must be resolved in favor of the insured. *La Rotunda*, 87 Ill.App.3d at 451, 42 Ill.Dec. at 224, 408 N.E.2d at 933, *Maneikis*, 655 F.2d at 822. Even if recovery in the underlying suit is premised upon several theories of liability, some of which are excluded from policy coverage, the insurer is still obligated to defend the insured as long as one of the theories advanced might possibly fall within the scope of the policy coverage. *Maryland Casualty*, 64 Ill.2d at 194, 355 N.E.2d at 28; *Maneikis*, 655 F.2d at 822.

The comprehensive general liability insurance policy issued to Bazzi provided coverage for damages incurred because of "bodily injury" or "property damage" caused by an "occurrence." "Property damage" is defined by the policy as

(1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.

An "occurrence" is defined by the policy as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."

To determine whether the allegations in the state court complaint potentially fall within the policy's coverage and thus give rise to a duty to defend, it is necessary to summarize briefly the facts of the underlying action. Grant Park Packing Co. and Grant Park Sausage Co. (hereinafter collectively referred to as "Grant Park") filed suit in 1986 against Bazzi, a group of architects, and a corporation that supplied steel joists which were used in a construction project involving the remodeling of Grant Park's garage. Grant Park had hired the architects and Bazzi in 1983 to remodel an existing garage for use as a meat market and to construct a penthouse on top of the new roof of the garage. Prior to the completion of the project, the parties modified the original drawings and specifications to permit the construction of a second story on top of the garage. During the pouring of the concrete for the floor of the second story in January 1984, the supporting joists started to buckle, compromising the structural integrity of the whole building. Grant Park alleged that as a result of the negligent and willful and wanton acts of the architects, Bazzi, and the steel supplier,

---

1. Jurisdiction in the district court was based on diversity of citizenship and the parties agree that Illinois law governs the action.

2. Ohio also sought a declaratory judgment that it was not liable under the insurance policy for any claims against Bazzi arising out of the action filed in state court by Grant Park. The district court declined to rule on the issue of Ohio's liability under the policy, finding it to be prematurely before the court. The court explained that Ohio's liability depended upon the adjudication of factual questions in the pending Grant Park action and hence the issue was not ripe for review. See *Centennial Insurance Co. v. Applied Health Care Systems*, 710 F.2d 1288, 1289 n. 2 (7th Cir.1983). Ohio has not appealed this portion of the district court's decision.

the entire building was made "unsafe and unusable, the plaintiffs suffered great loss of time in their business and expended large sums of money to completely tear down and rebuild the second floor construction and to reinforce the roof joists and steel columns installed in the interior of the building because the foundation of the existing building was inadequate to support the second floor construction." (Pl.App. 66–67, 71, Complaint Count III, ¶ 9 and Count IV, ¶ 9).

■ We agree with the district court that a liberal reading of the complaint in the Grant Park action reveals that it alleges facts that are potentially within the coverage of the policy. The complaint alleges that the structural integrity of the existing garage building was compromised, and was thus made unsafe and unusable, by the negligent and willful and wanton conduct of Bazzi. These allegations of "physical injury to ... tangible property [occurring] during the policy period, including the loss of use thereof at any time resulting therefrom," would appear to constitute "property damage" caused by an "occurrence," thereby stating a claim against Bazzi that is potentially within the coverage of the Ohio policy.

Ohio argues that the underlying action seeks recovery not for property damage but for economic losses that are not within the scope of the policy's coverage. It is well established under Illinois insurance law that economic losses sustained as a result of defects in or damage to the insured's own work or product are not covered by a comprehensive general liability insurance policy. See *Western Casualty & Surety Co. v. Brochu,* 105 Ill.2d 486, 498, 86 Ill.Dec. 493, 499, 475 N.E.2d 872, 878 (1985); *Qualls v. Country Mutual Insurance Co.,* 123 Ill.App.3d 831, 833–834, 78 Ill.Dec. 934, 937–938, 462 N.E.2d 1288, 1291–1292 (1984); *Sentry Insurance Co. v. S & L Home Heating Co.,* 91 Ill.App.3d 687, 690–691, 47 Ill.Dec. 102, 105, 414 N.E.2d 1218, 1221 (1980); *Consumers Construction Co. v. American Motorists Insurance Co.,* 118 Ill.App.2d 441, 451, 254

N.E.2d 265, 270 (1969). As the court in *Qualls* explained:

> [C]omprehensive general liability policies like the one here are intended to protect the insured from liability for injury or damage to the persons or property of others; they are not intended to pay the costs associated with repairing or replacing the insured's defective work and products, which are purely economic losses.... Finding coverage for the cost of replacing or repairing defective work would transform the policy into something akin to a performance bond.

123 Ill.App.3d at 833–834, 78 Ill.Dec. at 937, 462 N.E.2d at 1291.

Grant Park's allegations, however, are not limited to damage to and defects in Bazzi's own work and products. Rather Grant Park alleges damage to the structure of a building already in existence. In construing policy language which Ohio argues is identical to that before us now, the Illinois Supreme Court held:

> Damage to property *other than the insured's own work or product,* arising from breach of a warranty that work will be done in a workmanlike manner, is expressly not excluded under [the policy]. In short, 'the policy in question does not cover an accident of faulty workmanship but rather faulty workmanship which causes an accident.' (*Weedo v. Stone–E–Brick, Inc.* (1979), 81 N.J. 233, 249, 405 A.2d 788, 796.)

*Brochu,* 105 Ill.2d at 498, 86 Ill.Dec. at 499, 475 N.E.2d at 878 (emphasis in original). All of the above cases cited by Ohio involve damage solely to the product or work of the insured. For example, *Brochu* and *Qualls* involved defects in the construction of new homes and *Consumers Construction* defects in the construction of a new school, while *Sentry* involved deterioration and corrosion in heat exchangers and air conditioning compressors supplied by the insured. Had Bazzi contracted to construct an entirely new building for Grant Park, any damage to or defects in that building, which would be defined as the property or work product of Bazzi, would not be covered under the policy. But that

is not the case now before us. Because the Grant Park complaint alleges damage to property other than Bazzi's own work or product, namely the structure of the existing garage, the district court properly concluded that the state court action states a claim for property damage that is potentially within the coverage of the insurance policy.

■ On appeal Ohio also asserts that even if the Grant Park action states a property damage claim within the policy's coverage, the claim falls within several exclusionary provisions incorporated in the policy.[3] According to Ohio, these provisions clearly operate to exclude Grant Park's claim from coverage under the policy. We will not reach the merits of this argument because Ohio did not properly raise it before the district court. This Court has repeatedly held that if a party fails to press an argument before the district court, he waives the right to present that argument on appeal. See, *e.g.*, *National Fidelity Life Insurance Co. v. Karaganis*, 811 F.2d 357, 360 (7th Cir.1987); *Lazzara v. Howard A. Esser, Inc.*, 802 F.2d 260, 268 (7th Cir.1986); *Erff v. MarkHon Industries, Inc.*, 781 F.2d 613, 618–619 (7th Cir.1986). "[A] trial judge may properly depend upon counsel to apprise him of the issues for decision. He is not obligated to conduct a search for other issues which may lurk in the pleadings." *Libertyville Datsun Sales v. Nissan Motor Corp.*, 776 F.2d 735, 737 (7th Cir.1985) (quoting *Desert Palace, Inc. v. Salisbury*, 401 F.2d 320, 324 (7th Cir.1968)).

Ohio did not respond in its reply brief in this Court to Bazzi's claim in its brief that Ohio had waived the exclusion argument by failing to raise it below. At oral argument Ohio insisted that it had argued the exclusionary provisions in the district court, but our review of the record reveals that this assertion is simply not true. In its memorandum in support of its motion for judgment on the pleadings filed June 12, 1986, Ohio did recite the various exclusions in a section of the memorandum describing the insurance policy. However, the memorandum made only one argument in support of the motion—that no coverage existed under the policy for the underlying action because the complaint failed to allege property damage caused by an occurrence. (Pl.App. 84, 91–95). Ohio never actually argued that any of the exclusionary provisions on which it now relies provided a basis for avoiding its duty to defend Bazzi. Consequently, we cannot consider these provisions to have been properly before the district court.

■ Particularly in cases like this one, an insurance company is under an obligation to do more than inundate the district court with arguably applicable policy provisions and force the court to wade through the provisions in an attempt to determine which one might provide an appropriate basis for excluding coverage. For an exclusionary provision to be properly raised before the district court, it is not enough for an insurance company merely to recite it to the court in a long description of the policy; it must explain to the court why the provision is applicable in the case before it and how the provision operates to exclude the disputed claim from coverage under the policy. Ohio failed to make such an argu-

---

**3.** Specifically Ohio points to three provisions in an endorsement to the policy:

IV. BROAD FORM PROPERTY DAMAGE LIABILITY COVERAGE (Including Completed Operations)

The insurance for property damage liability applies, subject to the following additional provisions:

(A) Exclusions (k) and (o) are replaced by the following:

\* \* \* \* \* \*

(2) except with respect to liability under a written sidetrack agreement or the use of elevators [this insurance does not apply:]

(d) to that particular part of any property, not on premises owned by or rented to the insured,

(i) upon which operations are being performed by or on behalf of the insured at the time of the property damage arising out of such operations, or

(ii) out of which any property damage arises, or

(iii) the restoration, repair or replacement of which has been made or is necessary by reason of faulty workmanship thereon by or on behalf of the insured.

\* \* \* \* \* \*

(Pl.App. 23).

ment and we will not consider it for the first time in this Court.

For the reasons set out above, the decision of the district court is affirmed.