917 N.E.2d 1155 (2009)
335 Ill.Dec. 91
CMK DEVELOPMENT CORPORATION, an Illinois Corporation, Plaintiff-Appellee and Cross-Appellant,
v.
WEST BEND MUTUAL INSURANCE COMPANY, Defendant-Appellant and Cross-Appellee.
No. 1-08-1155.
Appellate Court of Illinois, First District, Sixth Division.
October 30, 2009.
*1157 Thomas F. Lucas, McKenna Storer, of Chicago, IL, for Appellant.
Howard L. Teplinsky and Antonia Hays, of Buffalo Grove, IL, for Appellee.
Justice ROBERT E. GORDON delivered the opinion of the court:
This appeal concerns whether an insurance company had a duty to defend its insured, a residential developer.
The facts are undisputed, and can be summarized in a paragraph. After the developer built a home for a couple, the couple presented a long list of alleged defects with the home. The developer then contacted its insurance company which refused to obtain counsel to represent the developer, in a subsequent arbitration proceeding against the developer. After entering arbitration, the purchasers and the developer agreed to settle for $47,500. The developer then sued the insurance company, in the case at bar, for its refusal to obtain counsel to represent the developer in the arbitration proceeding and to pay for the damages.
Like the facts, the point of dispute between the two parties is also easy to summarize. The developer admits that, normally, damage caused by defective workmanship is not covered by the type of policy involved here, which is a "Commercial General Liability Coverage" (CGL) policy. However, the developer argues that Illinois courts have held that this type of policy does cover damage caused by defective workmanship, if the damage is to the property of others. In response, the insurance company agrees with this principle of law, but argues that the damage alleged by the purchasers did not qualify as damage to the property of others.
The trial court found coverage, and the developer received a judgment of $85,906.60. The insurance company now appeals. For the reasons stated below, we reverse.

BACKGROUND

1. The Parties
The developer is plaintiff CMK Development Corporation, a residential real estate developer and an Illinois corporation The insurance company is defendant West Bend Mutual Insurance Company, an insurance carrier licensed to issue policies in the State of Illinois. The purchasers are Bruce and Suzanne Beatus, who are not parties to this action.

2. The Events at Issue
In March 1999, the purchasers entered a contract with the developer for the construction *1158 of a new residence in Chicago, Illinois. The closing occurred on April 19, 2000. The day before the closing, on April 18, the purchasers submitted their first list of alleged defects in workmanship to the developer. After two years of trying to resolve their differences, the purchasers served a demand for arbitration on June 5, 2002. On April 26, 2002, approximately six weeks before the arbitration demand, the developer notified the insurance company of the purchasers' claims and requested the insurance company to defend and indemnify it against these claims. On June 12, 2002, the insurance company denied coverage. During arbitration, the developer negotiated a settlement of the purchasers' claims for $47,500. On June 12, 2004, the developer filed this suit against the insurance company.

3. The Insurance Contract
The insurance contract was entered by the parties on April 23, 1999, and it initially covered the period from April 18, 1999, to April 18, 2000. The developer, in its complaint, alleged that this contract "was renewed from time to time and was in effect at all times relevant to this litigation." The insurance company, in its answer, admitted this allegation. The insurance contract included business automobile coverage, commercial property coverage and commercial general liability coverage.
On this appeal, the issues concern the part of the policy that covers commercial general liability. This part of the policy is a 13-page standardized form, entitled "Commercial General Liability Coverage Form." The first page of the CGL form states that it covers the insured for "property damage," (1) only if the property damage was caused by an "occurrence" during the policy period and (2) only if the property damage was not "expected or intended from the standpoint of the insured." The first page of the CGL form states in relevant part:
"SECTION I  COVERAGES
COVERAGE A. BODILY INJURY AND PROPERTY
DAMAGE LIABILITY
1. Insuring Agreement
a. We will pay those sums that the insured becomes legally obligated to pay as damages because of `bodily injury' or `property damage' to which this insurance applies. We will have the right and duty to defend the insured against any `suit' seeking those damages. However, we will have no duty to defend the insured against any `suit' seeking damages for `bodily injury' or `property damage' to which this insurance does not apply. We may at our discretion investigate any `occurrence' and settle any claim or `suit' that may result.
* * *
b. This insurance applies to `bodily injury' and `property damage' only if:
(1) The `bodily injury' or `property damage' is caused by an `occurrence' that takes place in the `coverage territory;' and
(2) The `bodily injury' or `property damage' occurs during the policy period.
* * *
2. Exclusions
This insurance does not apply to:
a. Expected or intended injury
`Bodily injury' or `property damage' expected or intended from the standpoint of the insured. This exclusion does not apply to `bodily injury' resulting from the use of reasonable force to protect persons or property." (Emphasis added.)
*1159 The last few pages of the 13-page CGL form contain a section entitled "Definitions." This section provides a definition for the word "occurrence," which is used to define the term "property damage," above. In essence, the CGL form equates the word "occurrence" with the word "accident":
"`Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions."
The definitions section of the CGL form does not provide a definition for the word "accident."
The CGL form also states that it does not cover damage either to "real property" or "any property" caused by the contractor's work:
"2. Exclusions
This insurance does not apply to:
* * *
j. Property damage to:
(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the `property damage' arises out of those operations; or
(6) That particular part of any property must be restored, repaired or replaced because `your work' was incorrectly performed on it."
The above-quoted exclusion uses the term "your work," which is defined in the definitions section of the CGL form, as follows:
"19. `Your work' means:
a. Work or operations performed by you or on your behalf; and
b. Materials, parts or equipment furnished in connection with such work or operations."
The various sections, quoted above, are the sections concerned in this appeal.

4. The Defects Alleged by the Purchasers
The purchasers filed a "Statement of Claim" in the arbitration proceeding that alleged, in essence, that they did not receive the home that they had "bargained for":
"Given the price demanded by Respondents, and given the representations made by the Respondents * * * to the [purchasers] before closing regarding the quality, luxury and elegance of the homes built by [them], plus the representations made * * * to the [purchasers] after closing that CMK Development would promptly and professionally remedy the defects, and given the Respondents' failure to complete the punch-list or remedy the defects, Respondents did not build the residence bargained for by [the purchasers]."
The purchasers' statement had three counts: (1) breach of contract; (2) breach of the implied warranties of habitability and workmanlike construction; (3) misrepresentation, for misrepresenting that the developer would build "a high quality luxury home with rigorous attention to detail"; and (4) consumer fraud, for allegedly supplying the purchasers "with a false certificate of occupancy from the City of Chicago."
The purchasers' statement listed 58 defects, which were grouped under the following headings: (1) outdoor concrete work; (2) outdoor rails, deck and stairs; (3) exterior finish work; (4) roof construction; (5) plumbing; (6) heating, ventilation and air conditioning systems; (7) interior finish work; and (8) electrical systems.
*1160 Examples of specific defects include: scratches on a bathtub and toilet bowl; water damage to a cork floor in the "lower level exercise room" which was caused "by water leaking under rear basement service door"; a "rear basement service door" which lacked "caulking or molding at lower termination" and had a non-functional "door sweep"; an "improper pitch of the concrete flatwork [which] caused pooling of water"; and "poor quality * * * flatwork" which "caused the premature deterioration of the surface of the concrete."

5. Procedural History
The developer's complaint in the case at bar contained three counts: (I) breach of contract; (II) estoppel; and (III) penalties and attorney fees for "vexatious and unreasonable" conduct, pursuant to section 155 of the Illinois Insurance Code. 215 ILCS 5/155 (West 2008).[1]
The trial court made three substantive orders in this case. In the first order, on October 25, 2005, the trial court entered judgment on the pleadings for the developer, finding that the insurance company had a duty to defend. The developer had argued that three of the defects alleged by the purchasers were covered or potentially covered under the insurance policy; and that the potential coverage of these three defects triggered the duty to defend. The three defects were: (1) defective outdoor concrete work, (2) water damage to a cork floor on the lower level; and (3) scratches on a bathtub and toilet bowl. With respect to count I, the trial court held that, while the last two defects were not potentially covered, the third one was, and thus the developer was entitled to judgment on the pleadings on this ground In its order, the trial court did not state whether it also granted judgment for count II. However, both parties state in their appellate briefs that the trial court's grant of judgment on count II was "implicit" or "incorporated" in its order, without explaining why. After the October 2005 order, the parties engaged in discovery concerning the third count.
In its second order, on December 17, 2007, the trial court granted the insurance company's motion for summary judgment on the developer's third count, thereby denying the developer's claim for section 155 penalties and fees.
In its third order, on April 2, 2008, the trial court entered judgment for the developer in the amount of $85,906.60. When calculating its alleged damages under count I, the developer had included the costs to defend the matter against the purchasers, which were incurred prior to the date when the claim was tendered to the insurance company. Over the insurance company's objection, the trial court included those costs in the judgment, entered on April 2, 2008.
On this appeal, the insurance company objects to the judgment, including the pre-tender costs; and the developer cross-appeals for section 155 fees and penalties.

ANALYSIS
This appeal presents three questions. The first question is whether the insurance company had a duty to defend the developer. If we answered yes to the first question, then we would have to decide, second, whether the trial court was correct in including pre-tender defense costs in the judgment for the developer. If we answered yes to the first question, then we *1161 would also have to decide, third, whether the trial court erred in granting summary judgment in favor of the insurance company on the developer's claim for penalties and attorney fees under section 155 of the Insurance Code. 215 ILCS 5/155 (West 2008).
For the reasons explained below, we answer no to the first question, thus rendering the other two questions moot. Since the insurance company had no duty to defend, the developer was then not entitled to either pre-tender costs or section 155 penalties.

1. Standard of Review
The standard of review for all three questions is de novo. Adames v. Sheahan, 233 Ill.2d 276, 296, 330 Ill.Dec. 720, 909 N.E.2d 742 (2009) ("This court reviews an order granting summary judgment de novo."); Weather-Tite, Inc. v. University of St. Francis, 233 Ill.2d 385, 389, 330 Ill.Dec. 808, 909 N.E.2d 830 (2009) ("We review appeals from summary judgment rulings de novo."); Gillen v. State Farm Mutual Automobile Insurance Co., 215 Ill.2d 381, 385, 294 Ill.Dec. 163, 830 N.E.2d 575 (2005) (the standard of review for a grant of judgment on the pleadings is de novo).
This appeal comes to us on a grant of summary judgment (735 ILCS 5/2-1005(c) (West 2008)) and a grant of judgment on the pleadings (735 ILCS 5/2-615(e) (West 2008) ("Any party may seasonably move for judgment on the pleadings.")). The Code of Civil Procedure permits a trial court to grant summary judgment only "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2008).
Like summary judgment, judgment on the pleadings can only be granted if there is no genuine issue of material fact. Gillen, 215 Ill.2d at 385, 294 Ill.Dec. 163, 830 N.E.2d 575; Pekin Insurance Co. v. Richard Marker Associates, Inc., 289 Ill. App.3d 819, 821, 224 Ill.Dec. 801, 682 N.E.2d 362 (1997). The difference between the two motions is that a motion for judgment on the pleadings usually occurs at a much earlier stage of the litigation, when there has been little or no discovery; and thus the trial court has less to consider when deciding it. "In ruling on a motion for judgement on the pleadings, the court will consider only [1] those facts apparent from the face of the pleadings, [2] matters subject to judicial notice, and [3] judicial admissions in the record." Gillen, 215 Ill.2d at 385, 294 Ill.Dec. 163, 830 N.E.2d 575; Board of Managers of the Townhomes of Woodland Hills Condominium Ass'n v. State Farm Fire & Casualty Co., 329 Ill.App.3d 531, 533, 263 Ill.Dec. 793, 768 N.E.2d 874 (2002). The court will accept as true all "well-pleaded facts" and all "reasonable inferences" that can be drawn from those well-pleaded facts. Gillen, 215 Ill.2d at 385, 294 Ill.Dec. 163, 830 N.E.2d 575; Woodland Hills, 329 Ill. App.3d at 533, 263 Ill.Dec. 793, 768 N.E.2d 874. On review, we must determine, first, if there was any issue of material fact; and, second, if there was no factual issue, whether the movant was entitled to judgment as a matter of law. Gillen, 215 Ill.2d at 385, 294 Ill.Dec. 163, 830 N.E.2d 575; Richard Marker, 289 Ill.App.3d at 821, 224 Ill.Dec. 801, 682 N.E.2d 362; Indiana Insurance Co. v. Hydra Corp., 245 Ill.App.3d 926, 928, 185 Ill.Dec. 775, 615 N.E.2d 70 (1993). As with a grant of summary judgment, our standard of review is de novo. Gillen, 215 Ill.2d at 385, 294 Ill.Dec. 163, 830 N.E.2d 575; Woodland Hills, 329 Ill. App.3d at 533, 263 Ill.Dec. 793, 768 N.E.2d 874.
*1162 In addition, this case concerns the meaning of terms in a standardized insurance policy, which is a legal question that also requires de novo review. Valley Forge Insurance Co. v. Swiderski Electronics, Inc., 223 Ill.2d 352, 360, 307 Ill. Dec. 653, 860 N.E.2d 307 (2006); Ohio Casualty Insurance Co. v. Oak Builders, Inc., 373 Ill.App.3d 997, 1001, 312 Ill.Dec. 1, 869 N.E.2d 992 (2007); United Services Automobile Ass'n v. Dare, 357 Ill.App.3d 955, 963, 294 Ill.Dec. 258, 830 N.E.2d 670 (2005). When a court construes the terms of a policy, our main goal is to give effect to the intent of the contracting parties, as expressed by the language in the contract that they signed. Swiderski, 223 Ill.2d at 362, 307 Ill.Dec. 653, 860 N.E.2d 307; Ohio Casualty Insurance Co. v. Oak Builders, Inc., 373 Ill.App.3d 997, 1000, 312 Ill.Dec. 1, 869 N.E.2d 992 (2007). As with any other contract, we construe an insurance policy as a whole, giving effect to every provision, if possible. Swiderski, 223 Ill.2d at 362, 307 Ill.Dec. 653, 860 N.E.2d 307; Ohio Casualty, 373 Ill.App.3d at 1000, 312 Ill.Dec. 1, 869 N.E.2d 992.
Normally, we define the words in an insurance policy by using their plain and ordinary meaning. Swiderski, 223 Ill.2d at 363, 307 Ill.Dec. 653, 860 N.E.2d 307 ("their plain and ordinary meaning"); SBC Holdings, Inc. v. Travelers Casualty & Surety Co., 374 Ill.App.3d 1, 10, 313 Ill.Dec. 250, 872 N.E.2d 10 (2007) (their "plain, ordinary meaning"); Ohio Casualty, 373 Ill.App.3d at 1000, 312 Ill.Dec. 1, 869 N.E.2d 992; Allstate Insurance Co. v. Smiley, 276 Ill.App.3d 971, 977, 213 Ill. Dec. 698, 659 N.E.2d 1345 (1995) ("their plain and ordinary meaning"). If the words, when given their plain meaning, are unambiguous, then a court must apply the terms of the policy, as written. Swiderski, 223 Ill.2d at 363, 307 Ill.Dec. 653, 860 N.E.2d 307; Ohio Casualty, 373 Ill.App.3d at 1000, 312 Ill.Dec. 1, 869 N.E.2d 992. However, if the words are ambiguous, we will construe them strictly against the insurance company that drafted them. Swiderski, 223 Ill.2d at 363, 307 Ill.Dec. 653, 860 N.E.2d 307; Ohio Casualty, 373 Ill.App.3d at 1001, 312 Ill.Dec. 1, 869 N.E.2d 992; Dare, 357 Ill.App.3d at 963, 294 Ill.Dec. 258, 830 N.E.2d 670. In addition, "[i]f the application of an exclusion results in denying the duty to defend, that exclusion must be `clear and free from doubt.'" Dare, 357 Ill.App.3d at 964, 294 Ill.Dec. 258, 830 N.E.2d 670, quoting Mount Vernon Fire Insurance Co. v. Heaven's Little Hands Day Care, 343 Ill. App.3d 309, 320-21, 277 Ill.Dec. 366, 795 N.E.2d 1034 (2003); Smiley, 276 Ill.App.3d at 977, 213 Ill.Dec. 698, 659 N.E.2d 1345 (ambiguous provisions that limit an insurer's liability "will be construed most strongly against the insurer").

2. The Purchasers' Complaint
For our decision about coverage, our focus is on the purchasers' complaint. Normally, with a judgment on the pleadings, we review primarily the allegations in the plaintiff's complaint. Gillen, 215 Ill.3d at 385. However, when the issue is whether an insurance company had to defend an insured against another party, we must also look to the allegations made by this party in its complaint against the insured, to see if its allegations triggered the insurance company's duty to defend. Swiderski, 223 Ill.2d at 363, 307 Ill.Dec. 653, 860 N.E.2d 307; Northbrook Property & Casualty Co. v. Transportation Joint Agreement, 194 Ill.2d 96, 98, 251 Ill.Dec. 659, 741 N.E.2d 253 (2000); Dare, 357 Ill.App.3d at 961, 294 Ill.Dec. 258, 830 N.E.2d 670. Thus, even though the purchasers are not parties to this appeal, the allegations made by them in their arbitration demand are central to deciding it.
*1163 Our supreme court has provided its lower courts with explicit instructions about the lens through which we must view the underlying complaint. Our supreme court has repeatedly held that, if the underlying complaint alleges facts "within, or potentially within, the coverage of the policy," the insurer must defend the insured, "even if the allegations are groundless, false, or fraudulent, and even if only one of several theories of recovery alleged in the complaint falls within the potential covering of the policy." Swiderski, 223 Ill.2d at 363, 307 Ill.Dec. 653, 860 N.E.2d 307; Northbrook, 194 Ill.2d at 98, 251 Ill.Dec. 659, 741 N.E.2d 253; see also Dare, 357 Ill.App.3d at 961, 294 Ill.Dec. 258, 830 N.E.2d 670. Courts must resolve any doubts about the duty to defend in favor of the insured. Swiderski, 223 Ill.2d at 363, 307 Ill.Dec. 653, 860 N.E.2d 307 ("The allegations must be liberally construed in favor of the insured."); Northbrook, 194 Ill.2d at 98, 251 Ill.Dec. 659, 741 N.E.2d 253 (for an insurance company to refuse to defend, the lack of a duty must be "clear"); Dare, 357 Ill.App.3d at 963, 294 Ill.Dec. 258, 830 N.E.2d 670; ("any doubt * * * is to be resolved in favor of the insured"). Since an insurance company must defend actions that are even "potentially" within coverage, its duty to defend is "much broader" then its duty to indemnify. Dare, 357 Ill.App.3d at 961, 294 Ill.Dec. 258, 830 N.E.2d 670; Northbrook, 194 Ill.2d at 98, 251 Ill.Dec. 659, 741 N.E.2d 253 (a duty to defend arises if the complaint alleges facts that "either actually or potentially" bring the case within the policy's coverage). The duty to defend and the duty to indemnify are two "separate and distinct duties." Dare, 357 Ill. App.3d at 961, 294 Ill.Dec. 258, 830 N.E.2d 670.
Although the purchasers listed 58 defects in their arbitration demand, the developer claimed that only 3 defects triggered the insurance company's duty to defend. Swiderski, 223 Ill.2d at 363, 307 Ill.Dec. 653, 860 N.E.2d 307 ("even if only one of several theories of recovery alleged in the complaint falls within the potential covering of the policy"). The three defects were: (1) scratches to a toilet bowl and bathtub; (2) water damage to outdoor concrete work; and (3) water damage to a cork floor. As we explain in the next two sections, we agree that damage to other property is covered by the policy, but we reject the developer's arguments that these three defects potentially qualified as damage to other property.
The developer made the following arguments concerning these three defects. First, the scratches to the toilet bowl and tub could have happened after the closing; and since, after the closing, the property then belonged to the purchasers, who are "others," the policy thus covered these post-closing defects. Second, the contractor's defective workmanship on a different home might have caused the water runoff which damaged the outdoor concrete work on the purchaser's home, and thus the purchasers' home constituted other property with respect to this separate house. Third, the cork floor may have been installed by the purchasers themselves, rather than by the developers, so that damage to it qualified as damage to the property of others, ie. the purchasers.
The trial court found that only the first defect, the scratches to the toilet bowl and bathtub, qualified as damage to other property, and that only this one defect triggered the duty to defend.

3. Other Property
The legal ground in dispute between the parties is very small. The parties agree that the policy required both an "occurrence" and "property damage" to trigger coverage on the facts of this case. The *1164 insurance company conceded in its reply brief to this court that, if the purchasers' arbitration demand contained allegations of damage to other property, then these allegations would satisfy both the requirements of an "occurrence" and of "property damage." As noted above, the developer claimed that only three of the alleged defects "potentially" raised claims of damage to other property. Swiderski, 223 Ill.2d at 363, 307 Ill.Dec. 653, 860 N.E.2d 307 (if the underlying complaint alleges facts "within, or potentially within, the policy's coverage," the insurer must defend the insured); Woodland Hills, 329 Ill.App.3d at 534, 263 Ill.Dec. 793, 768 N.E.2d 874. Thus, we must determine only whether these three defects potentially raised claims of damage to other property.
This exception for damage to other property is not explicitly stated in the policy itself, but comes instead from the case law interpreting CGL policies. Illinois courts have held in numerous cases that "construction defects that damage something other than the project itself will constitute an `occurrence'" under a CGL policy. Stoneridge Development Co. v. Essex Insurance Co., 382 Ill.App.3d 731, 752, 321 Ill.Dec. 114, 888 N.E.2d 633 (2008); Richard Marker, 289 Ill.App.3d at 823, 224 Ill.Dec. 801, 682 N.E.2d 362 (there was an "occurrence" under a CGL policy, where defective workmanship caused water damage to the homeowners' furniture, clothing and antiques); Monticello Insurance Co. v. Wil-Freds Construction, Inc., 277 Ill. App.3d 697, 705, 214 Ill.Dec. 597, 661 N.E.2d 451 (1996) (there would have been an "occurrence," if water had damaged cars in the parking garage or falling concrete had hit a pedestrian). Thus, even "defective workmanship could be covered if it damaged something other than the project itself." Stoneridge, 382 Ill.App.3d at 753, 321 Ill.Dec. 114, 888 N.E.2d 633.
Examples of other property include:
(1) a homeowner's "furniture, clothing and antiques" (Richard Marker, 289 Ill. App.3d at 823, 224 Ill.Dec. 801, 682 N.E.2d 362);
(2) "cars in the parking garage" built by the insured (Wil-Freds, 277 Ill. App.3d at 705, 214 Ill.Dec. 597, 661 N.E.2d 451); and
(3) "carpets, upholstery, [and] drapery" in schools constructed by the insured (United States Fidelity & Guaranty Co. v. Wilkin Insulation Co., 144 Ill.2d 64, 75, 81, 161 Ill.Dec. 280, 578 N.E.2d 926 (1991) ("damage to the property of a third party")).
The term "damage to other property" does not include allegations of:
(1) "`a sag in the house,'" a "`leak,'" and cracks in the "`footings and walls'" by purchasers of a new home, against the carpenter who built it, even though his poor workmanship led to the "breaking [of] a bathtub" (Qualls v. Country Mutual Insurance Co., 123 Ill.App.3d 831, 832, 835, 78 Ill.Dec. 934, 462 N.E.2d 1288 (1984));
(2) water damage to the basement, damaged concrete work, and cracked floors (Wil-Freds, 277 Ill.App.3d at 699, 214 Ill.Dec. 597, 661 N.E.2d 451; see Hydra, 245 Ill.App.3d at 929, 185 Ill. Dec. 775, 615 N.E.2d 70 (numerous cracks in a concrete floor, which appeared after construction was complete)).
(3) collapse of a masonry wall, due to inadequate bracing, during construction (Viking, 358 Ill.App.3d 34, 38, 294 Ill. Dec. 478, 831 N.E.2d 1 (2005)), see also Stoneridge, 382 Ill.App.3d at 734, 321 Ill.Dec. 114, 888 N.E.2d 633 (moving, cracking and general failure of "`the *1165 load bearing elements'" of the townhouse, due to "`unsuitable structural bearing soils and earth retention'"); State Farm Fire & Casualty Co. v. Tillerson, 334 Ill.App.3d 404, 406, 268 Ill. Dec. 63, 777 N.E.2d 986 (2002) (building over a cistern and failing to take the necessary precautions to prevent uneven settling of the soil beneath the room)).[2]
The coverage for damage to other property is not intended to cover the insured's contractual liability when its completed project does not meet the bargained-for standard. Stoneridge, 382 Ill. App.3d at 753, 321 Ill.Dec. 114, 888 N.E.2d 633; Tillerson, 334 Ill.App.3d at 410, 268 Ill.Dec. 63, 777 N.E.2d 986 (intended "not for the insured's contractual liability"); Richard Marker, 289 Ill.App.3d at 822, 224 Ill.Dec. 801, 682 N.E.2d 362 ("not intended to pay the costs associated with repairing or replacing the insured's defective work and products") Wil-Freds, 277 Ill.App.3d at 709, 214 Ill.Dec. 597, 661 N.E.2d 451 (not intended to cover loss because the completed work is not what was "`bargained'" for). If the homeowners are pursuing a breach of contract claim in order to recover the loss due to the repair or replacement of the defective work or the diminished value of their home, there is no coverage. Stoneridge, 382 Ill.App.3d at 753, 321 Ill.Dec. 114, 888 N.E.2d 633 (no coverage where unstable soil was causing the load-bearing elements of the home to fail); Viking Const. Management, Inc. v. Liberty Mut. Ins. Co., 358 Ill.App.3d 34, 54-55, 294 Ill.Dec. 478, 831 N.E.2d 1 (2005) ("where the underlying complaint alleges only damages in the nature of repair and replacement of the defective product or construction," there is no coverage); Tillerson, 334 Ill.App.3d at 410, 268 Ill.Dec. 63, 777 N.E.2d 986.
"[T]here must be damage to something other than the structure, i.e., the building, in order for coverage to exist." Viking, 358 Ill.App.3d at 54, 294 Ill.Dec. 478, 831 N.E.2d 1; Richard Marker, 289 Ill.App.3d at 822, 224 Ill.Dec. 801, 682 N.E.2d 362 (there must be "damage to other materials not furnished by the insured"). As Justice Burke wrote for the appellate court, the underlying complaint must allege "negligent workmanship that resulted in damage to something other than the structure worked upon." Viking, 358 Ill.App.3d at 54, 294 Ill.Dec. 478, 831 N.E.2d 1. For example, in Richard Marker, the court found a duty to defend under a CGL policy, where the underlying complaint alleged that the defective workmanship caused damage to personal property. Richard Marker, 289 Ill.App.3d at 823, 224 Ill.Dec. 801, 682 N.E.2d 362. The complaint alleged "damage to furniture, clothing and antiques when uninsulated pipes froze and burst." Richard Marker, 289 Ill.App.3d at 823, 224 Ill.Dec. 801, 682 N.E.2d 362.
In the case at bar, the purchasers alleged that they did not receive the home that they had bargained for, and they listed *1166 58 examples, including the 3 defects that are at issue here: the scratched toilet bowl and tub; the water-damaged concrete work; and the water-damaged cork floor. To recover for these defects, they brought a claim of breach of contract, and other related claims. As discussed above, there is no coverage for contract liability that arises when a contractor fails to deliver the home that the purchasers bargained for.

4. Developer's Arguments
To circumvent the lack of coverage for contract liability, the developer makes several clever arguments with respect to the three named defects.

a. Scratched Tub and Toilet Bowl
With respect to the scratched tub and toilet bowl, the developer claims that the scratches could have been made after the closing, when title to the home then passed to the purchasers, thereby creating damage to the property of others, namely, the purchasers. There are several problems with this argument. First, the developer does not cite a single case to support this distinction between pre-closing and post-closing damage that it wants us to draw. Second, what little case law that we can find on this timing issue appears to go the other way. E.g. Hydra, 245 Ill.App.3d at 929, 185 Ill.Dec. 775, 615 N.E.2d 70 (post-construction cracks in a concrete floor did not trigger a duty to defend). Third, the developer does not explain why, on policy grounds, it would make sense to find coverage for scratches that a developer made on the day after closing, but not find coverage for scratches that it made the day before. Fourth, the case law does not provide coverage for damage to the structure itself, and the tub and toilet bowl were part of the structure that the developer promised to deliver. Viking, 358 Ill. App.3d at 54, 294 Ill.Dec. 478, 831 N.E.2d 1 ("there must be damage to something other than the structure, i.e., the building, in order for coverage to exist"). Last but certainly not least, a prior case concerning a broken bathtub held that it was not covered. Qualls, 123 Ill.App.3d at 835, 78 Ill.Dec. 934, 462 N.E.2d 1288. Where a home builder's alleged that "poor workmanship" led to the "breaking of a bathtub," the appellate court held that the bathtub was not covered by a CGL policy. Qualls, 123 Ill.App.3d at 835, 78 Ill.Dec. 934, 462 N.E.2d 1288. For these reasons, we do not find a duty to defend arose from this defect.

b. Water-Damaged Concrete Work
With respect to the water-damaged concrete work, the developer argues that its defective workmanship on a different home might have caused the water runoff, and thus the purchasers' home constituted other property with respect to this separate house. In its brief to this court, the developer claims that the purchaser's statement "essentially alleges that improper work performed on a property directly north of the [purchasers'] residence caused water to runoff and pool on [the purchasers] property and, as a result, caused damage to their home." In support of this assertion, the developer cites the following allegation in the purchasers' statement:
"Concrete gangway of residence immediately to the north (also built by Respondents) is improperly pitched toward [the purchasers'] home causing runoff to collect against [the purchasers'] home."
There are several problems with this argument. First, the developer does not cite a single case to support its claim that its own work-product, covered by the same insurance policy, should be considered "other property," for purposes of that same insurance policy. Second, it also does not advance any policy reasons why we should find that, when a developer *1167 constructs two adjacent homes, which are covered under the same policy, that the first home should be considered "other property" with respect to the second home. Third, the pooling of water was a defect with the purchaser's home that, the purchasers alleged, was within the developer's control to prevent. As discussed above, the CGL policy was not intended to cover construction defects. Wil-Freds, 277 Ill. App.3d at 699, 214 Ill.Dec. 597, 661 N.E.2d 451 (CGL policy did not cover water damage, leaks, or damage to concrete work); Hydra, 245 Ill.App.3d at 929, 185 Ill.Dec. 775, 615 N.E.2d 70 ("general coverage provision in the policies" did not cover post-construction cracks in a concrete floor).

c. Water-Damaged Cork Floor
With respect to the water-damaged cork floor, the developer argues that the cork floor may have been installed by the purchasers themselves, rather than by the developers, so that damage to it qualified as damage to the property of others, i.e. the purchasers. However, the developer points to nothing in the purchasers' statement that supports its pure speculation that the cork floor  as opposed to the other 57 defective items listed there  was installed by the purchaser. The entire statement complains of the developer's failure to deliver the high-quality product that was promised, and then it lists 58 examples of the developer's failure to deliver. There is nothing in this statement to suggest that the cork floor was somehow different from all the other items listed. In addition, the purchasers alleged that the listed items were not damage to personal property, but were "defects in construction of the residence." While we must, and do, resolve any doubts in favor of coverage, there is nothing in this statement to raise a doubt. Dare, 357 Ill. App.3d at 963, 294 Ill.Dec. 258, 830 N.E.2d 670 ("any doubt * * * is to be resolved in favor of the insured"). Since we find that there is nothing to suggest that the cork floor qualified as other property, the allegation of damage to it did not trigger the duty to defend.[3]Wil-Freds, 277 Ill. App.3d at 699, 214 Ill.Dec. 597, 661 N.E.2d 451 (CGL policy did not cover water damage to the basement or cracked floors); Hydra, 245 Ill.App.3d at 929, 185 Ill.Dec. 775, 615 N.E.2d 70 ("general coverage provision in the policies" did not cover post-construction cracks in a floor).

5. Policy Considerations
Finding that these defects are not covered furthers the purpose of a CGL policy. Our supreme court has described the purpose of a CGL policy as follows:
"Comprehensive general liability policies * * * are intended to protect the insured from liability for injury or damage to the persons or property of others, they are not intended to pay the costs associated with repairing or replacing the insured's defective work and products, which are purely economic losses. [Citations.] Finding coverage for the cost of replacing or repairing defective work would transform the policy into something akin to a performance bond." (Brackets and ellipsis in original). Travelers Insurance Co. v. Eljer Manufacturing, Inc., *1168 197 Ill.2d 278, 314, 258 Ill.Dec. 792, 757 N.E.2d 481 (2001), quoting Qualls v. Country Mutual Insurance Co., 123 Ill.App.3d 831, 833-34, 78 Ill.Dec. 934, 462 N.E.2d 1288 (1984).
Elaborating on this purpose, the appellate courts have explained that:
"[If] insurance proceeds could be used for damages from defective workmanship, a contractor could be initially paid by the customer for its work and then by the insurance company to repair or replace the work. [Citation.] Treating a CGL policy like a performance bond would be unjust to the CGL insurer, which, in contrast to the surety on a performance bond, cannot bring suit against the contractor for the defective construction." Stoneridge, 382 Ill.App.3d at 752, 321 Ill.Dec. 114, 888 N.E.2d 633, citing Wil-Freds, 277 Ill.App.3d at 709, 214 Ill.Dec. 597, 661 N.E.2d 451.
Thus, allowing coverage for the construction defects alleged here would violate the purpose behind a CGL policy.
Without case law or policy reasons, the developer asks us to expand the definitions of "other property" to include construction defects in a new home. This expansion would obliterate the existing definition and transform a CGL policy into a performance bond, something that our supreme court, and appellate court before us, have warned should not happen.
For all these reasons, we find that the three named defects did not trigger a duty to defend.

6. Estoppel
The developer claims that the insurance company is estopped from raising any policy defenses to coverage. The estoppel doctrine provides that, if the underlying complaint "potentially" alleges coverage, then the insurance company has only two options: "(1) defend the suit under a reservation of rights or (2) seek a declaratory judgment that there is no coverage." Employers Insurance of Wausau v. Ehlco Liquidating Trust, 186 Ill.2d 127, 150, 237 Ill.Dec. 82, 708 N.E.2d 1122 (1999). The developer argues that since the insurance company did not pursue either option, it is now estopped from asserting any policy defenses to coverage.
Concerning the estoppel doctrine, the parties have no disagreement about what the law is. They agree that the estoppel doctrine applies only if the allegations of the complaint demonstrate potential coverage; and they both cite, as the controlling case, our supreme court's decision in Employers Insurance of Wausau v. Ehlco Liquidating Trust, 186 Ill.2d 127, 237 Ill.Dec. 82, 708 N.E.2d 1122 (1999). They also both agree that a finding for the developer on its estoppel count was implicit in the trial court's order of judgment on the pleadings.
In Ehlco, our supreme court explained when the estoppel doctrine applies:
"The estoppel doctrine applies only where an insurer has breached its duty to defend. Thus, a court inquires whether the insurer had a duty to defend and whether it breached that duty. See Clemmons [v. Travelers Insurance Co., 88 Ill.2d 469, 475-78, 58 Ill.Dec. 853, 430 N.E.2d 1104 (1981) ] (determining first that the insurer had a duty to defend and then finding that the insurer had renounced that duty). Application of the estoppel doctrine is not appropriate if the insurer had no duty to defend, or if the insurer's duty to defend was not properly triggered. These circumstances include where the insurer was given no opportunity to defend; where there was no insurance policy in existence; and where, when the policy and the complaint are compared, there clearly was no coverage or potential for coverage." Ehlco, 186 Ill.2d at 151, 237 Ill.Dec. 82, 708 N.E.2d 1122.
*1169 In the preceding sections, we reviewed the complaint and found no "potential for coverage." Ehlco, 186 Ill.2d at 151, 237 Ill. Dec. 82, 708 N.E.2d 1122. As a result, the estoppel doctrine does not apply. Hydra, 245 Ill.App.3d at 932, 185 Ill.Dec. 775, 615 N.E.2d 70 (the estoppel doctrine did not apply, since the underlying arbitration demand "did not allege a claim potentially within the policy coverage"); see also Woodland Hills, 329 Ill.App.3d at 535, 263 Ill.Dec. 793, 768 N.E.2d 874 (the estoppel doctrine did not apply, since the underlying complaint did not allege potential coverage); Kim v. State Farm Fire & Casualty Co., 312 Ill.App.3d 770, 778, 245 Ill. Dec. 448, 728 N.E.2d 530 (2000) (the estoppel doctrine did not apply, since "a comparison of the allegations in the underlying complaint to the policy language reveals that no potential for coverage existed under the terms of the policy").

CONCLUSION
In sum, we find that the insurance company had no duty to defend its insured, the developer. Normally, damage caused by defective workmanship is not covered by a CGL policy. However, a CGL policy does cover defective workmanship, when the resulting damage is to the property of others. The developer identified three defects that, it claimed, potentially qualified as damage to the property of others. For the foregoing reasons, we rejected the developer's arguments, finding that none of these defects were, even potentially, damage to the property of others. Thus, we reverse the trial court's judgment.
REVERSED
J. GORDON and McBRIDE, JJ., concur.
NOTES
[1] A few months before the start of this action, section 155 was amended in order to increase the available penalties. The amendment took effect on January 1, 2004; and the developer filed its complaint against the insurance company on June 12, 2004. Judgement was entered on April 4, 2008.
[2] In Country Mutual Insurance Co. v. Carr, 372 Ill.App.3d 335, 311 Ill.Dec. 171, 867 N.E.2d 1157 (2007), the appellate court did find a duty to defend under a CGL policy for damage to walls. However, Carr is distinguishable from the case at bar, as well as from most of the cases cited here, because Carr involved negligence claims rather than breach of contract claims. Carr, 372 Ill. App.3d at 343, 311 Ill.Dec. 171, 867 N.E.2d 1157 (explaining that "these cases are distinguishable from the instant case, as the underlying complaints in those cases alleged contractual or warranty breaches, not negligence as in the instant case"), citing Indiana Insurance Co. v. Hydra Corp., 245 Ill.App.3d 926, 929, 185 Ill.Dec. 775, 615 N.E.2d 70 (1993), Wil-Freds, 277 Ill.App.3d at 699, 214 Ill.Dec. 597, 661 N.E.2d 451, Tillerson, 334 Ill.App.3d at 406, 268 Ill.Dec. 63, 777 N.E.2d 986, Viking, 358 Ill.App.3d at 36, 294 Ill.Dec. 478, 831 N.E.2d 1.
[3] The developer cites Trovillion v. United States Fidelity & Guaranty Co., 130 Ill.App.3d 694, 86 Ill.Dec. 39, 474 N.E.2d 953 (1985) which involved a vinyl floor and where coverage was found. However, as this court has previously observed about Trovillion, "Trovillion did not address the argument" that the alleged damage qualified as damage to other property. Tillerson, 334 Ill.App.3d at 413, 268 Ill.Dec. 63, 777 N.E.2d 986, discussing Trovillion, 130 Ill.App.3d at 700, 86 Ill.Dec. 39, 474 N.E.2d 953. Trovillion was decided solely on estoppel grounds. Tillerson, 334 Ill.App.3d at 413, 268 Ill.Dec. 63, 777 N.E.2d 986, discussing Trovillion, at 130 Ill.App.3d at 700, 86 Ill.Dec. 39, 474 N.E.2d 953.